UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

WILLIAM ROSAS and JOSE ORELLANA,                    :
*individually and on behalf of all others similarly*    :
*situated,*                                                            :
                                                                        :
                                              Plaintiffs,    :        REPORT AND
                                                                        :        RECOMMENDATION
                                                                        :
                -against-                                      :        23-CV-1212 (DG)(MMH)
                                                                        :
M AND M LA SOLUCION FLAT FIXED INC.,      :
MARCO T. MEJIA, and ELMA BUSTILLOS,       :
                                                                        :
                                              Defendants.    :

------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs William Rosas and Jose Orellana bring this wage and hour action against

Defendants M and M Solucion Flat Fixed Inc. ("M and M"), Marco T. Mejia, and Elma

Bustillos, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et*

*seq.*, the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.* and

related regulations. (*See generally* Compl., ECF No. 1.)[1] Before the Court is Plaintiffs' second

motion for default judgment pursuant to Federal Rules of Civil Procedure 55(b)(2) and Local

Civil Rule 55.2. (*See generally* Mot., ECF No. 25.)[2] The Honorable Diane Gujarati referred

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted. Citations to the Local Civil Rules are to the Rules effective October 15, 2021.

[2] Plaintiffs' submissions include a notice of motion (Mot., ECF No. 25); a memorandum of law (Mem., ECF No. 26); the declaration of Katherine Morales (Morales Decl., ECF No. 27) and its twelve exhibits (Morales Decl. Exs. 1–12, ECF Nos. 27-1 through 27-12); the declaration of Rosas (Rosas Decl., ECF No. 28); Rosas's supplemental declaration (Rosas Supp. Decl., ECF No. 29); the declaration of Orellana (Orellana Decl., ECF No. 30); Orellana's supplemental declaration (Orellana Supp. Decl., ECF No. 31); and an affidavit of service for the motion papers (Aff. of Service, ECF No. 32).

the motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion should be **granted** as follows: (1) default judgment should be entered against Defendants and (2) Plaintiffs should be awarded damages as set forth herein.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

#### 1.    Defendants

M and M is a New York domestic business corporation with its principal place of business located at 53-02 Flushing Avenue, Queens, New York.  (Compl., ECF No. 1 ¶ 9.)  M and M specializes in the sale, service, and repair of tires for motor vehicles and also offers related services such as oil changes, brake checks, and suspension repairs.  (*Id.* ¶ 10.)  At all relevant times, Mejia and Bustillos were the co-owners of M and M and had the authority to hire and fire employees, set wages and schedules, and maintain employment records.  (*Id.* ¶ 13.)

#### 2.    Rosas

Rosas was employed by Defendants as a tire technician from approximately December 1, 2019, to April 25, 2022.  (*Id.* ¶¶ 6, 26.)  Rosas alleges that for the entirety of his employment, other than when he was on vacation from April 4, 2022, to April 23, 2022, he worked four days per week, as follows: Tuesdays from approximately 7:00 p.m. until 7:00 a.m., and

Thursdays, Fridays, and Saturdays from approximately 8:00 a.m. until 8:00 p.m. for a total of 48 hours per week. (*Id.* ¶¶ 27, 29.)  Rosas was not afforded meal or rest breaks.  (*Id.* ¶ 30.) During Rosas's employment, Defendants paid him $80.00 per day from around December 1, 2019, to January 2020, and $100.00 per day from February 2020 until the end of his employment.  (*Id.* ¶¶ 32–33.)  Defendants paid Rosas's wages in cash during his employment. (*Id.* ¶ 34.)

In or around December 2021, Rosas requested that Defendants stop paying his wages in cash and instead pay his wages through the appropriate payroll check with deductions and withholdings.  (*Id.* ¶¶ 35, 39.)  Mejia responded that in order to pay Rosas via payroll check, Rosas's work hours would have to be reduced from 48 hours per week to 40 hours per week. (*Id.* ¶¶ 36, 38.)  While Rosas agreed to a reduction of hours, the modifications to his work schedule were never implemented and Defendants continued to pay Rosas in cash.  (*Id.*)  In February 2022, Rosas asked about the status of his request to be paid via payroll check.  (*Id.* ¶ 37.)  In or around March 2022 and April 2022, Rosas asked Bustillos to provide him with a W-2 form but she declined his request.  (*Id.* ¶ 39.)  On or around April 25, 2022, Defendants terminated Rosas's employment in retaliation for his requests for pay via payroll check. (*Id.* ¶ 40.)

### 3.    Orellana

Orellana was employed by Defendants from approximately January 1, 2016, to February 21, 2022.  (*Id.* ¶ 41.)  Orellana alleges that from January 1, 2016 to approximately January 2021, he worked six days per week, Tuesdays through Sundays, from approximately 10:00 a.m. until 10:00 p.m., for a total of 72 hours per week.  (*Id.* ¶ 43.)  During this time, Orellana alleges that he was compensated at a rate of $80.00 per day.  (*Id.* ¶ 47.)  From

February 2021 until February 21, 2022, Orellana worked five days per week, Mondays through Wednesdays and Saturdays through Sundays, from approximately 10:00 a.m. to 10:00 p.m., for a total of 60 hours per week. (*Id.* ¶ 44.) During this period, Orellana claims that he was compensated at a rate of $100.00 per day. (*Id.* ¶ 48.) Orellana similarly alleges that he was not afforded meal or rest breaks during his employment hours. (*Id.* ¶ 45.)

Both Plaintiffs allege that Defendants failed to pay them minimum wage, overtime pay, and spread of hours pay. (*Id.* ¶¶ 51–53.) Plaintiffs further allege that Defendants did not timely pay them and failed to provide Plaintiffs with wage notices and wage statements. (*Id.* ¶¶ 54–56.) Rosas alleges that Defendants retaliated against him for attempting to assert his rights. (*Id.* ¶¶ 103–11.)

### B.    Procedural History

Plaintiffs initiated this action on February 14, 2023. (*See generally id.*) Plaintiffs served the summons and Complaint on Defendants in February 2023. (Affs. of Service, ECF Nos. 8–10.) At Plaintiffs' request, after Defendants failed to answer or otherwise respond to the Complaint, the Clerk of Court entered a notation of default on June 2, 2023. (Entry of Default, ECF No. 13.)

Plaintiffs initially moved for default judgment on August 23, 2023, seeking damages including unpaid wages, liquidated damages, prejudgment interest, and attorneys' fees. (ECF No. 15.) Judge Gujarati referred the motion for report and recommendation. (Aug. 24, 2023 Order.) At a motion hearing, the Court granted Plaintiffs' oral application to withdraw the first motion for default judgment without prejudice for failure to comply with the Local Civil Rules' requirements for serving individuals and with the Servicemembers Civil Relief Act. (Nov. 17, 2023 Min. Entry & Order.) Plaintiffs filed the instant motion for default judgment on February

7, 2024.   (Mot., ECF No. 25.)   Judge Gujarati referred the motion for report and recommendation.  (Feb. 8, 2024 Order.)

To date, Defendants have not appeared in this case or responded to Plaintiffs' motion.

## II.   <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc*., No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).   *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).   If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).   *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).   To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv*., 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Double Green Produce, Inc. v. F. Supermarket Inc*., 387 F. Supp. 3d 260, 265

(E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  In accordance with 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiffs' claims pursuant to the FLSA, 29 U.S.C. § 216(b).  The Court may also exercise supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367(a) because they arise out of the same facts and circumstances as the FLSA claims.  *Perez v. 50 Food Corp.*, No. 17-CV-7837 (AT)(BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *adopted by* 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendants. *First*, Plaintiffs properly served M and M by delivering copies of the Summons and Complaint to the New York Secretary of State. (Aff of Service, ECF No. 8). This method of service on a corporation complies with federal and state procedural rules. Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Plaintiffs also properly served Mejia and Bustillos by delivering a copy of the Summons and Complaint to a person of suitable age and discretion at M and M and by mailing a copy of process to Mejia and Bustillos at M and M. (Affs. of Service, ECF Nos. 9, 10). These service methods follow federal and state rules for service on an individual. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).

*Second*, "[t]he Court has general jurisdiction over [M and M], because [it is a] New York corporation[] 'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301). Though Plaintiffs do not allege Mejia or Bustillos's domicile,[3] the Court would have general jurisdiction over them if they were domiciled in New York. *See Francis*, 2018 WL 4292171 at *3. If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302." *Weitsman v. Levesque*, No. 3:17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up). Mejia and Bustillos conduct business within the state and are "co-

---

[3] Plaintiffs submit evidence that Mejia and Bustillos were living together at M and M's place of business in Queens, New York. (*See* Rosas Supp. Decl., ECF No. 29 ¶¶ 9–11; Orellana Supp. Decl., ECF No. 31 ¶¶ 10–15.)

owners . . . in control of M and M" (Compl., ECF No. 1 ¶¶ 4, 9, 13), which sufficiently establishes specific jurisdiction. *Id.* Third, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C.    Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Complaint occurred during Plaintiffs' employment at M and M, a New York corporation with its principal place of business in Queens, New York. (Compl., ECF No. 1 ¶ 9.)

## IV.    PROCEDURAL COMPLIANCE

### A.    Local Civil Rules

Plaintiffs have demonstrated that they took the required procedural steps to provide notice to the defaulting Defendants and to comply with the requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") Plaintiffs include a notice of motion (Local Civ. R. 7.1(a)(1)), a memorandum of law in support of the motion (Local Civ. R. 7.1(a)(2)), a copy of the Clerk's certificate of default for each defendant (Local Civ. R. 55.2(b)(1)), a copy of the Complaint (Local Civ. R. 55.2(b)(2)), proof of service of the Complaint (Local Civ. R. 55.1(b)(3)), proof of mailing the

motion to Defendants (Local Civ. R. 55.2(c)), and a proposed judgment (Local Civ. R. 55.2(b)(3)).  *See Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as compliant with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).  Plaintiffs also submit affidavits describing their efforts to confirm Mejia and Bustillos's last known residence in order to properly serve the motion papers. (Rosas Supp. Decl., ECF No. 29 ¶¶ 9–11; Orellana Supp. Decl., ECF No. 31 ¶¶ 10–15.)  Accordingly, the Court finds that Plaintiffs have complied with this district's Local Rules.

### B.    Servicemembers Civil Relief Act

Pursuant to the Servicemembers Civil Relief Act ("SCRA"), "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit." *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CIV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of New Jersey v. Est. of Locker*, No. 12 Civ. 882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).  Failure to comply with these requirements is sufficient to deny default judgment. *Windward Bora, LLC v. Ortiz*, No. 21-

CV-4154 (MKB)(JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *adopted by* 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).

Here, Plaintiffs complied with the SCRA because they submitted affidavits confirming that Mejia and Bustillos are not serving in the military and provide sufficient facts in support of these assertions. Specifically, Plaintiffs state that they "conducted a search through the Department of Defense's Service Members Civil Relief Act website . . . to determine the military status of Mejia and Bustillos." (Morales Decl., ECF No. 27 ¶ 26.) The search determined that throughout the course of this litigation neither Mejia nor Bustillos was serving in the military. (*Id.* ¶¶ 27–28.) Plainitffs also include the corresponding certifications of military status confirming Mejia and Bustillos's non-military status. (Morales Decl. Exs. 7–8, ECF Nos. 27-7 to 27-8.) Accordingly, the Court finds that Plaintiffs have complied with the SCRA.

## V.   <u>DEFAULT JUDGMENT FACTORS</u>

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiffs' favor. *First*, "Defendants' non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021). *Third*, Plaintiffs will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible.

## VI.    LIABILITY

### A.    Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc*., 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). The statute of limitations begins to run when an employee begins to work for the employer. *Esquivel*, 2023

WL 6338666, at *5.  Plaintiffs commenced this action on February 14, 2023. (Compl., ECF No. 1.)  Rosas began working for Defendants in December 2019; Orellana's employment began in January 2016.  (Compl., ECF No. 1 ¶¶ 26, 41.)  In light of the Defendants' default, therefore, Rosas and Orellana may recover under the FLSA for any claims that accrued starting on February 14, 2020.  For their respective NYLL claims for unpaid wages, Rosas may recover for the entire period of his employment, while Orellana may only recover for violations on or after February 14, 2017.

### B.    FLSA Coverage

To establish a minimum wage or overtime claim under FLSA, the "plaintiff must prove the following: (1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp*., No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019) (cleaned up); 29 U.S.C. §§ 206(a) & 207(a).

### 1.    Employer Subject to the FLSA

The Complaint alleges that Defendants were Plaintiffs' employers within the meaning of the FLSA.  (Compl., ECF No. 1 ¶¶ 11, 13–18.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp*., No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya*

*Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207. These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively. *Sanchez v. Ms. Wine Shop, Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

### a.    M and M

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry*, 2022 WL 1018791, at *6.

Here, the Complaint states, in conclusory fashion, that "M and M is a covered employe within the meaning of the FLSA" and that "Defendants operate in interstate commerce and, upon information and belief, their revenues are in excess of the minimum required to fall within the jurisdiction of the FLSA." (Compl., ECF No. 1 ¶¶ 11, 17.) In their affidavits, each Plaintiff avers that "[u]pon information and belief, Defendants operated in interstate commerce and had gross revenues in excess of $500,000.00 per year during the relevant period." (Rosas Decl., ECF No. 28 ¶ 7; Orellana Decl., ECF No. 30 ¶ 7.)

"On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'" *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *adopted by* Order Adopting R. & R., *Alvarado v. J.A*

*Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases). *But see Salamanca v. ABC Corp.*, No. 19-CV-1334 (WFK)(SIL), 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), *adopted by* 2021 WL 3269089 (E.D.N.Y. July 30, 2021) (in default judgment motion, finding no enterprise coverage under the FLSA, but permitting NYLL claims to proceed) ("Vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless."). While the Complaint does not specify which goods or materials were moved in or produced for commerce, it does allege that M and M offers "mechanical work that includes tire rotation, balance, alignment, puncture repair, and replacement of tires." (Compl., ECF No. 1 ¶ 10.) Courts have found that materials used at auto repair shops, like M and M's, which frequently handle automobiles, repair tools, tires, gasoline, and oil, likely originate from outside New York. *E.g.*, *Rigoberto Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB)(RML), 2018 WL 6718766, at *3 (E.D.N.Y. Nov. 7, 2018), *adopted sub nom. Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB)(RML), 2018 WL 6517111 (E.D.N.Y. Dec. 11, 2018); *see also Pelico v. SD Auto. Inc.*, No. 21-CV-04215 (ENV)(CLP), 2022 WL 17820136, at *3 (E.D.N.Y. Aug. 25, 2022), *adopted by* Order Adopting R. & R., *Pelico v. SD Auto. Inc.*, No. 21-CV-4215 (ENV)(CLP) (E.D.N.Y. Oct. 12, 2022). Therefore, it is reasonable to infer that M and M's supplies and products would have originated from outside of New York.[4]

---

[4] Because the Court finds that Plaintiffs satisfy the enterprise coverage standard, it need not address whether Plaintiffs also satisfy the individual coverage test. However, the Court notes that Plaintiffs

Accordingly, Plaintiffs' allegations and the uncontested evidence in this case are sufficient to establish FLSA enterprise coverage.[5]

### b.    Mejia and Bustillos

With respect to an individual defendant, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: 'control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate

---

[5] could also establish FLSA protection under the individual coverage test. "Individual coverage under the FLSA can be established where the employee is engaged in commerce or produced goods in commerce." *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH), 2024 WL 1251600, at *3 (E.D.N.Y. Mar. 25, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Sarr v. VEP Assocs. LLC*, No. 22-CV-4386 (ENV)(MMH) (E.D.N.Y. Apr. 15, 2024). "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. Further, "[a]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in . . . handling . . . or in another manner working on such goods." 29 U.S.C. § 203(j). As noted, Plaintiffs regularly handle motor vehicles, repair tools, and other products likely produced outside of, and transported to, New York.

[5] Notwithstanding this recommendation, "[t]he preferred practice would be to provide specific facts as to each element of [Plaintiffs'] claim[s]." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411(ARR)(VMS), 2017 WL 835321, at *5 n.2 (E.D.N.Y. Feb. 14, 2017), *adopted by* 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61 (applying the *Carter* factors to determine individual liability under the FLSA).   "The test looks at the totality of the circumstances, and no individual factor is dispositive." *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *6 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry, 722 F.3d* at 105).

Plaintiffs have shown that Mejia and Bustillos also qualify as employers under the FLSA based the operational control they exerted over Plaintiffs and M and M.  Plaintiffs allege that "[a]t all relevant times, Mejia and Bustillos were and still are co-owners . . . in control of M and M, who exercised significant control over M and M's operations and had the authority to hire, fire, and discipline employees, set employees' work schedules and conditions of employment, determine the rate and method of payment for employees, and maintain employment records." (Compl., ECF No. 1 ¶¶ 13–15.)  Plaintiffs further allege that "Bustillos exercised significant control over M and M's financial management, including handling its payroll . . . [and] distribut[ing] employees' wages." (*Id.* ¶ 14.)  As for Mejia, Plaintiffs allege that he also exercised significant control over M and M's financial management "including securing merchandise and determining marketing strategies to promote M and M . . . recruit[ing] employees . . . and coordinat[ing] customer service procedures." (*Id.* ¶ 15.)  These allegations are sufficient to establish that Mejia and Bustillos, like M and M, are employers required to comply with the FLSA overtime and minimum wage provisions.

### 2.    Employee Subject to the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'"  *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)).  The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements.  *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions).  Additionally, "[t]he FLSA exempts from its overtime-pay requirement 'any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers.'"  *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (quoting 29 U.S.C. § 213(b)(10)(A)).

Plaintiffs alleges that they "were non-exempt employees pursuant to the FLSA." (Compl., ECF No. 1 ¶ 50.)  Specifically, Plaintiffs allege they were employed as tire technicians whose responsibilities included "installing and balancing tires, checking tire pressure and wear patterns, patching tires, rotating tires, and assisting customers." (*Id.* ¶¶ 28, 42.)  The Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions because the Complaint does not suggest that M and M was primarily engaged in the business of selling vehicles.  Rather, M and M specialized in the sale, service, and repair of tires.  (*Id.* ¶ 10.)

17

Accordingly, Plaintiffs have shown that they are employees within the meaning of the FLSA and qualify for the protections of the FLSA.

### C.   NYLL Coverage

In order to plead a NYLL claim, Plaintiffs "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190). "Under the [NYLL], the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Pelgrift v. 335 W. 41st Tavern Inc*., No. 14-CV-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citing N.Y. Lab. Law §§ 651(5)–(6) and *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014)). Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee." *Brito*, 2022 WL 875099, at *8 (cleaned up). The Court has already determined that the Defendants are Plaintiffs' employers within the meaning of the FLSA. (*See* § VI.B.1., *supra*.) "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition … Defendants are [Plaintiffs'] employers within the meaning of the NYLL" as well. *Perry*, 2022 WL 1018791, at *7. Accordingly, Plaintiffs qualify for the protections of the NYLL.

### D.   Statutory Violations

In the Complaint, Plaintiffs allege that Defendants violated the FLSA and NYLL minimum wage and overtime pay provisions (Counts 1 through 4) and the NYLL provisions related to spread of hours, untimely pay, wage notices, and wage statements (Counts 5 through

8).  (*See* Compl., ECF No. 1 ¶¶ 58–102.)  Rosas also alleges retaliation in violation of the FLSA and NYLL (Counts 9 and 10).  (*Id.* ¶¶ 103–12.)  However, in the motion, Rosas states that he does not seek damages for the retaliation claims.  (Morales Decl. ECF No. 27 at 2 n.1.)  In addition, while the Complaint states a cause of action for untimely pay (Count 6), the motion does not address or seek damages related to this claim.  (*See generally*, Mem., ECF No. 26; Morales Decl., ECF No. 27 ¶ 159; Morales Decl. Ex. 9, ECF No. 27-9 (damages chart).)  Because Rosas does not pursue the retaliation claim, and neither Plaintiff advances the untimely pay claim in the instant motion, both claims are waived.  *Esquivel*, 2023 WL 6338666, at *7.

### 1.   FLSA and NYLL Violations

### a.   Minimum Wage (Counts 1, 2)

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week."  *Pastrana v. Mr. Taco LLC*, No. 18-CV-9374 (GBD)(SN), 2022 WL 16857111, at *3 (S.D.N.Y. Sept. 23, 2022) (citing 29 U.S.C. § 206(a) and N.Y. Lab. Law § 652(1)), *adopted by* 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022).  "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated."  *Fermin*, 93 F. Supp. 3d at 41 (cleaned up).  "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked."  *Brito*, 2022 WL 875099, at *10.  Additionally, "[i]n the context of a default and where Plaintiffs lack access to the employment records necessary to prove they were not properly compensated, Plaintiffs may meet their burden of proof by relying on recollection alone."  *Pastrana*, 2022 WL 16857111, at *5

(quoting *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE)(KHP), 2020 WL 8549054, at *5 (S.D.N.Y. Nov. 25, 2020), *adopted by* 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020)).

As an initial matter, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiffs are entitled to recover whichever minimum wage rate was the highest at any given time during their respective periods of employment.  29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9.  Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of Plaintiffs' employment.   N.Y. Lab. Law § 652(1)(a)(ii);  12 N.Y.C.R.R. § 142-2.1(a)(1).  Plaintiffs allege that Defendants employed approximately ten employees at their automobile repair shop located in Queens, New York.  (Rosas Decl., ECF No. 28 ¶ 6; Orellana Decl., ECF No. 30 ¶ 6.)  Defendants are thus classified as "small employers" and are subject to the New York City rates for minimum wage.  N.Y. Lab. Law § 652(1)(a)(ii).  Further, Rosas alleges that he worked for Defendants from approximately December 1, 2019 through April 25, 2022 and Orellana alleges that he worked for Defendants from approximately January 1, 2016 through February 21, 2022.  (Compl., ECF No. 1 ¶¶ 26, 41.)  During this period, state and local minimum wage rates were higher than the federal minimum wage rate, and thus, Plaintiffs are entitled to compensation under the local minimum wage rate.  *Compare* N.Y. Lab. Law § 652(1)(a)(ii) (for employers with ten or fewer employees, applicable New York City minimum wage rate between $10.50 per hour and $15.00 per hour) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Next, "for the purposes of determining whether [each] Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Ms. Wine Shop*, 643

F. Supp. 3d at 371 (cleaned up).  Under the NYLL, the regular hourly wage rate for non-hospitality industry employees paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings."  12 N.Y.C.R.R. § 142-2.16.

Rosas alleges that from December 1, 2019 through January 2020 he regularly worked 12 hours per day, four days per week for a total of 48 hours per week for which Defendants which paid him $80 per day.  (Compl., ECF No. 1 ¶¶ 29, 32.)  Therefore, for this time period Rosas's regularly hourly rate was actually $6.67 ((4 days per week x $80 per day) / 48 hours per week).  Further, Rosas alleges that from February 2020 through April 25, 2022 he regularly worked 12 hours per day, four days per week for a total of 48 hours per week for which Defendants which paid him $100 per day.  (*Id.* ¶¶ 26, 29, 33.)  Therefore, for this time period Rosas's regularly hourly rate was actually $8.33 ((4 days per week x $100 per day) / 48 hours per week).

Orellana alleges similar underpayment. Specifically, he claims that from January 1, 2016 through January 2021, he regularly worked 12 hours per day, six days per week for a total of 72 hours per week, for which Defendants paid him $80 per day.  (Compl., ECF No. 1 ¶¶ 43, 47.)  Therefore, for this time period, Orellana's regularly hourly rate was actually $6.67 ((6 days per week x $80 per day) / 72 hours per week).  Orellana alleges that from February 2021 through February 2022, he regularly worked 12 hours per day, five days per week for a total of 60 hours per week for which Defendants paid him $100 per day.  (*Id.* ¶¶ 44, 48.)  Therefore, for this time period, Orellana's regularly hourly rate was actually $8.33 ((6 days per week x $100 per day) / 60 hours per week).

Thus, for the entirety of the Plaintiffs' respective periods of employment, Plaintiffs' hourly pay rates were well below the statutory New York State and New York City minimum wage rates during the relevant period. *See* N.Y. Lab. Law § 652(1)(a)(ii). Accordingly, the Court respectfully recommends that Defendants should be liable for violations of the FLSA's and NYLL's minimum wage provisions.

### b.    Overtime Wages (Counts 3, 4)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)). The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work," N.Y. Lab. Law § 160. For non-hospitality workers such as Plaintiffs, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for "working time over 40 hours each workweek." 12 N.Y.C.R.R. § 142-2.2. "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiffs sufficiently establish that Defendants failed to pay them the requisite overtime pay. Rosas specifies that during his employment with Defendants, he worked for approximately 48 hours per week, while Orellana states that he worked 60 to 72 hours per

week.  (Compl., ECF No. 1 ¶¶ 7, 43–44.)  And both Plaintiffs allege that Defendants "failed to compensate them with overtime premiums for hours worked in excess of forty (40) per week." (*Id.* ¶¶ 29, 32–33, 43–44, 47–48.)  The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime wages under both the FLSA and NYLL.

### 2.    NYLL Violations

### a.    Spread of Hours Pay (Count 5)

The NYLL regulations provide that, for non-hospitality workers, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which . . . the spread of hours exceeds 10 hours[.]"  12 N.Y.C.R.R. § 142-2.4.  The "spread of hours" is the length of time between the beginning and end of an employee's workday, and includes working time plus time off for meals plus intervals off duty.  *Id.* § 142-2.18.  A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in excess of ten hours on a given day but did not receive spread of hours pay. *Ms. Wine Shop*, 643 F. Supp. 3d at 371.  "A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff [may] not earn more than the minimum wage." *Fermin*, 93 F. Supp. 3d at 45 (cleaned up).

Both Plaintiffs allege that they worked twelve hours per day for which they did not receive spread-of-hours pay.  (Compl., ECF No. 1 ¶¶ 29, 43–44, 53.)  The Court already established that Plaintiffs did not earn more than the minimum wage.  (*See* § VI.D.1.a., *supra*.)  The Court thus respectfully recommends that, based on Plaintiffs' undisputed allegations, the Defendants should also be liable under the NYLL for unpaid spread of hours pay.

### b.      Wages Notices and Wage Statements (Counts 6, 7)

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number.  N.Y. Lab. Law § 195-1(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked."  *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195-3).

"The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation."  *Guthrie v. Rainbow Fencing Inc*., No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) (*"Guthrie I"*) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023)) (*"Guthrie II"*), *aff'd*, --- F.4th ---, No. 23-350, 2024 WL 3997427 (2d Cir. Aug. 30, 2024) (*"Guthrie III"*).  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To demonstrate an injury in fact, a plaintiff "must

show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (cleaned up).

Recently, the Second Circuit held that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" to plausibly allege a WTPA violation. *Guthrie III*, 2024 WL 3997427, at *5. Analyzing *TransUnion*, the Second Circuit noted that the Supreme Court rejected the concept of purely "informational injury" and clarified that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Guthrie III*, 2024 WL 3997427, at *4 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

> A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion. But the plaintiff-employee cannot "assume[ ] [t]his conclusion without analysis" or rely on "speculation and conjecture." . . . Rather, the plaintiff-employee must support a plausible "theory as to *how* he was injured by [the] defendants' failure to provide the required documents."

*Guthrie III*, 2024 WL 3997427, at *5 (quoting *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).

Here, the record establishes that Defendants' failure to provide hiring notices and wage statements to Plaintiffs caused them a tangible injury. *Guthrie II*, 2023 WL 2206568, at *6. Plaintiffs allege that "Defendants [] failed to furnish to [them] a payroll notice at the time of their hire, or at any time thereafter, containing [their] rates of pay, the designated payday, or other information required by NYLL 195(1)" and that "Defendants also failed to furnish to Plaintiff, with each wage payment, an accurate statement listing Plaintiffs' regular and

overtime rates and the number of regular and overtime hours worked . . . required by the NYLL." (Compl., ECF No. 1 ¶¶ 55–56.)  On their own, these allegations do not describe the "concrete injury" necessary to establish Plaintiffs' standing.  *Guthrie III*, 2024 WL 3997427, at *7 ("Without plausible allegations that [Plaintiff] suffered a concrete injury because of [Defendant's] failure to provide the required notices and statements, he lacks standing to sue for that statutory violation.")  However, each Plaintiff avers that Defendants' alleged failure to provide wage notices and wage statements "caused [him] to endure uncertainty regarding [his] wages and prevented [him] from taking action to correct Defendants' wage and hour violations as [he] had no means to confirm that [he] was being compensated in accordance with the terms of [his] employment and as required by federal and state law." (Rosas Supp. Decl., ECF No. 29 ¶¶ 6–7; Orellana Supp. Decl., ECF No. 31 ¶¶ 7–8.)  According to each Plaintiff, "Defendants injured [him] by failing to provide [him] with complete and accurate information about the terms of [his] compensation, which resulted in the underpayment of [his] wages." (Rosas Supp. Decl., ECF No. 29 ¶ 8; Orellana Supp. Decl., ECF No. 31 ¶ 9.)  Plaintiffs sufficiently establish Article III standing when they allege that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment.  *See Guthrie III*, 2024 WL 3997427, at *7 (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)) ("a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest" sufficient to establish standing); *see also*, *e.g.*, *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendants purported to claim against his salary); *see also*

*Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *5 (E.D.N.Y. July 18, 2023), *adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023) (plaintiff's affidavit in support of default judgment motion established Article III standing for NYLL wage notice claims where plaintiff alleged that "the breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages").[6]

The Court thus respectfully recommends that Defendants should be liable for violations of the NYLL's wage notice and wage statement provisions.

## VII.   DAMAGES

As Defendants' liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). "On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *4 (E.D.N.Y. Sept. 16, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

---

[6] The Court may consider affidavits that allege facts to support Article III standing, which directly implicates the Court's subject matter jurisdiction over Plaintiffs' NYLL wage notice and wage statement claims. *See Harty*, 28 F.4th 435 at 441–42 ("[A] district court has 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'") (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus*, *LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Perry*, 2022 WL 1018791, at *3 ("In the context of a motion for default judgment on FLSA and NYLL claims, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (cleaned up).

Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Royal Thai Plus*, 2018 WL 1770660, at *10. Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9. Because the NYLL provides greater or equal recovery than the FLSA at all relevant times during Plaintiffs' employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiffs seek unpaid minimum wage, overtime, and spread of hours pay; liquidated damages; damages for wage notice and wage statement violations; pre-judgment interest; attorneys' fees; and costs. (Mem., ECF No. 26 at 14–21.)

### A.    Minimum Wage

Plaintiffs request unpaid minimum wages consisting of $39,088.80 for Rosas and $114,409.32 for Orellana.  (Mem., ECF No. 26 at 15; Morales Decl., ECF No. 27 ¶¶ 54, 102, 159; Morales Decl. Ex. 9, ECF No. 27-9 at 2 (damages chart).)

The Court has already determined that Plaintiffs are entitled to the minimum wage rates set forth in the NYLL and its regulations because they were higher than the federal minimum wage rate during the relevant time period.  (*See* § VI.D.1.a., *supra*.)  Specifically, for employers with ten or fewer employees, the applicable weekly minimum wage rates for employers in New York City, such as Defendants, were: (1) $10.50 per hour between December 31, 2016, and December 30, 2017; (2) $12.00 per hour between December 31, 2017 and December 30, 2018; (3) $13.50 per hour between December 31, 2018 and December 30, 2019; and (4) $15.00 per hour on or after December 31, 2019.  N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. §§ 142-2.1(a)(1)(i)(b).  To calculate the minimum wage damages, the Court calculates the difference between each Plaintiff's regular rate of pay and the applicable minimum wage, multiplied by the number of regular rate hours worked per week, and multiplied by the number of weeks during the relevant period.

Throughout Rosas's employment he worked for a total of 48 hours per week.  (Morales Decl., ECF No. 27 ¶ 33; Rosas Decl., ECF No. 28 ¶ 14.)  From December 1, 2019 through January 2020, Defendants paid Rosas $6.67 per hour and from February 2020 through April 25, 2022, Defendants paid Rosas $8.33 per hour.  (*See* § IV.D.1.a., *supra*.)  Rosas, however, did not work from April 4, 2022 through April 24, 2022 because he was on vacation; thus, he is not owed minimum wages for this period.  (Morales Decl., ECF No. 27 ¶¶ 31, 53.) Using

the formula described above, Rosas is entitled to the unpaid minimum wages set forth in Table

1 for working 48 hours per week:

Table 1: Rosas Unpaid Minimum Wages

| Time Period | NYLL Min. Wage | Regular Pay Rate | Diff. between Min. Wage and Reg. Pay Rate | Regular Rate Hours Worked per week | Weeks[7] | Total Unpaid Min. Wages |
|---|---|---|---|---|---|---|
| 12/01/2019 to 12/31/2019 | $13.50 | $6.67 | $6.83 | 40 | 4 | $1,092.80 |
| 01/01/2020 to 01/31/2020 | $15.00 | $6.67 | $8.33 | 40 | 4 | $1,332.80 |
| 02/01/2020 to 04/03/2022 | $15.00 | $8.33 | $6.67 | 40 | 113 | $30,148.40 |
| | Total: | | | | | $32,574 |

From January 1, 2016 through January 2021, Orellana worked 72 hours per week and

was paid $6.67 per hour.  (Morales Decl., ECF No 27 ¶ 81; *see* § IV.D.1.a, *supra*.)  From

February 2021 through February 21, 2022, he worked 60 hours per week and was paid $8.33

per hour.  (Morales Decl., ECF No 27 ¶ 82; *see* § IV.D.1.a, *supra*.)  Using the formula

described above, Orellana is entitled to the following amount of unpaid minimum wages as

shown in Table 2:

---

[7] "Weeks" refers to the number of weeks during the corresponding dates of employment in each row.

Table 2: Orellana Unpaid Minimum Wages

| Time Period | NYLL Min. Wage | Regular Pay Rate | Diff. between Min. Wage and Reg. Pay Rate | # Regular Rate Hours per week | Weeks | Unpaid Min. Wages |
|---|---|---|---|---|---|---|
| 02/14/2017 to 12/31/2017 | $10.50 | $6.67 | $3.83 | 40 | 46 | $7,047.20 |
| 01/01/2018 to 12/31/2018 | $12.00 | $6.67 | $5.33 | 40 | 52 | $11,086.40 |
| 01/01/2019 to 12/31/2019 | $13.50 | $6.67 | $6.83 | 40 | 52 | $14,206.40 |
| 01/01/2020 to 01/31/2021 | $15.00 | $6.67 | $8.33 | 40 | 57 | $18,992.40 |
| 02/01/2021 to 02/21/2022 | $15.00 | $8.33 | $6.67 | 40 | 55 | $14,674 |
| | Total: | | | | | $66,006.40 |

In contrast, Plaintiffs apply the incorrect number of hours worked for the damages calculation. Specifically, each Plaintiff multiplies the difference between the regular rate of pay and the applicable minimum wage by the *total* number of hours worked per week instead of the regular rate hours worked per week. (*See* Morales Decl., ECF No. 27 ¶¶ 41, 43, 47, 49, 51.) For example, for the period between December 1, 2019 through December 31, 2019, Rosas calculates $1,311.36 in unpaid minimum wages as follows: (($13.50 – $6.67) x **48** hours per week) x 4 weeks). (*Id.* ¶¶ 39–42.) However, Rosas should have been paid his *regular* pay rate for 40 hours worked per week, and his *overtime* pay rate for any hours worked in excess of 40 per workweek: *i.e.*, (($13.50 – $6.67) x **40** hours per week) x 4 weeks). N.Y. Lab. Law § 160; 12 N.Y.C.R.R. § 142-2.2. Orellana's calculations adopt the same incorrect formula as Rosas's. (*See* Morales Decl., ECF No. 27 ¶¶ 90, 92, 94, 96, 100.) For example, for the period between February 14, 2017 through December 31, 2017, Orellana calculates $12,684.96 in unpaid minimum wages as follows: (($10.50 – $6.67) x **72** hours per week) x 46 weeks). (*Id.* ¶¶ 88–91.) As noted for Rosas, the *regular* pay rate is for 40 hours worked per week, and the

*overtime* pay rate is for any hours in excess of 40 per workweek – *i.e.*, (($10.50 – $6.67) x **40** hours per week) x 46 weeks).  N.Y. Lab. Law § 160; 12 N.Y.C.R.R. § 142-2.2.  This distinction renders Plaintiffs' formula incorrect and the Court does not adopt it.

Therefore, the Court respectfully recommends that for unpaid minimum wages, Rosas should be awarded of **$32,574** and Orellana should be awarded **$66,006.40**.

### B.    Overtime Wages

Plaintiffs request unpaid overtime compensation of $7,236 for Rosas and $50,874.00 for Orellana.  (Mem., ECF No. 26 at 15; Morales Decl., ECF No. 27 ¶¶ 70, 121, 159; Morales Decl. Ex. 9, ECF No. 27-9 at 2 (damages chart).)

As noted, "[u]nder both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate" for hours worked in excess of 40 hours per week.  *Brito*, 2022 WL 875099, at *16; *Dejesus,* 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'"  *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).

Plaintiffs are entitled to one- and one-half times their regular rate of pay based on the applicable New York City minimum wage.  Multiplying the number of hours worked in excess of 40 by 1.5 times the New York City minimum wage rate during the relevant time period, Defendants were required to pay Plaintiffs the following overtime hourly rates:  (1) $15.75 between December 31, 2016 and December 30, 2017 (*i.e.*, $10.50 x 1.5); (2) $18.00 per hour

between December 31, 2017 and December 30, 2018 (*i.e.*, $12.00 x 1.5); (3) $20.25 per hour between December 31, 2018 and December 30, 2019 (*i.e.*, $13.50 x 1.5); and (4) $22.50 on or after December 31, 2019 (*i.e.*, $15.00 x 1.5). "Because Plaintiff[s] [have] already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage times 1.5) by the total number of overtime hours worked[]" per week, and multiplied by the number of weeks during the relevant time period. *Ms. Wine Shop Inc.*, 643 F. Supp. 3d at 377.

Rosas worked 48 hours per week, of which 8 hours should have been paid at the overtime rate. For example, between December 1, 2019 and December 31, 2019, he was paid at the regular hourly rate of $6.67 for all hours worked, but should have been paid $20.25 for the 8 hours of overtime. The Court calculates his unpaid overtime for this period as $434.56 (*i.e.*, (($20.25 – $6.67) x 8 x 4)). Applying this formula, Rosas is entitled to the total unpaid overtime wages listed in Table 3:

Table 3: Rosas Unpaid Overtime Wages

| Dates of Employment | NYLL Min Wage. | NYLL OT Pay Rate | Regular Rate of Pay | Diff. between OT and Rate of Pay | OT Hours per week | Weeks | Total Unpaid OT Wages |
|---|---|---|---|---|---|---|---|
| 12/01/2019 to 12/31/2019 | $13.50 | $20.25 | $6.67 | $13.58 | 8 | 4 | $434.56 |
| 01/01/2020 to 01/31/2020 | $15.00 | $22.50 | $6.67 | $15.83 | 8 | 4 | $506.56 |
| 02/01/2020 to 04/03/2022 | $15.00 | $22.50 | $8.33 | $14.17 | 8 | 113 | $12,809.68 |
| | Total: | | | | | | $13,750.80 |

Orellana worked 72 hours per week between February 2017 and January 2021, of which 32 were overtime hours, and 60 hours per week between February 2021 and February 2022,

of which 20 were overtime hours.  Applying the same formula as above, he should receive

unpaid overtime wages set forth in Table 4:

Table 4: Orellana Unpaid Overtime Wages

| Time Period | NYLL Min. Wage | NYLL. OT Pay Rate | Regular Pay Rate | Diff. between OT and Rate of Pay | OT Hours per week | Weeks | Total Unpaid OT Wages |
|---|---|---|---|---|---|---|---|
| 02/14/2017 to 12/31/2017 | $10.50 | $15.75 | $6.67 | $9.08 | 32 | 46 | $13,365.76 |
| 01/01/2018 to 12/31/2018 | $12.00 | $18.00 | $6.67 | $11.33 | 32 | 52 | $18,853.12 |
| 01/01/2019 to 12/31/2019 | $13.50 | $20.25 | $6.67 | $13.58 | 32 | 52 | $22,597.12 |
| 01/01/2020 to 01/31/2021 | $15.00 | $22.50 | $6.67 | $15.83 | 32 | 57 | $28,873.92 |
| 02/01/2021 to 02/21/2022 | $15.00 | $22.50 | $8.33 | $14.17 | 20 | 55 | $15,587 |
| Total: | | | | | | | $99,276.92 |

Despite the clear statutory mandate, *see* 29 U.S.C. § 207(a)(1) and 12 N.Y.C.R.R.

§ 142-2.2, Plaintiffs incorrectly calculate the overtime rate.  Plaintiffs allege that they "were

not paid overtime compensation of *one and one-half times* their regular hourly rate or the

applicable minimum wage rate, whichever is for the hours worked in excess of forty per week,

whichever is greater, for the hours they worked in excess of forty per week."  (Compl., ECF

No. 1 ¶ 52 (emphasis added).)  Yet Plaintiffs inexplicably multiply the applicable minimum

wage rate during the relevant time period by **.5** instead of 1.5.  (*See* Morales Decl., ECF No. 27

¶¶ 55, 103.)  For example, for the period between December 1, 2019 through December 31,

2019, Rosas determined his unpaid overtime wages as $216.00 as follows: (($13.50 x .5) x 8

hours per week) x 4 weeks).  (*Id.* ¶¶ 56–59.)  Similarly, for the period between February 14,

2017 through December 31, 2017, Orellana calculates his unpaid overtime as $7,728.00: (($10.50 x .5) x 32 hours per week) x 46 weeks).  (*Id.* ¶¶ 103–07.)  This formula has been rejected by other courts, and this Court will not adopt it.  *See, e.g.*, *Lucero v. Shaker Contractors, Corp.*, No. 21-CV-8675 (LGS)(JW), 2023 WL 4828640, at *10 (S.D.N.Y. Apr. 21, 2023) ("*Lucero I*") ("Plaintiffs' counsel computed the lawful overtime wage as half of each Plaintiff's hourly wage as opposed to multiplying the regular hourly wage by 1.5 to determine the overtime wage amount."), *adopted as modified by* 2023 WL 4760598 (S.D.N.Y. July 26, 2023) ("*Lucero II*") (modifying overtime wages calculation but still using the 1.5 multiplier).

Therefore, the Court respectfully recommends that Plaintiffs should be awarded unpaid overtime pay consisting of **$13,750.80** for Rosas and **$99,276.92** for Orellana.

## C.    Spread of Hours Pay

Plaintiffs request unpaid spread of hours compensation consisting of $7,236 for Rosas and $20,109 for Orellana.  (Mem., ECF No. 26 at 16; Morales Decl., ECF No. 27 ¶¶ 78, 128, 159; Morales Decl. Ex. 9, ECF No. 27-9 at 2 (damages chart).)

Under the NYLL, an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours.  *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER), 2023 WL 7000934, at *5 (E.D.N.Y. Aug. 29, 2023) ("*E.P.E. Enter. Corp.*"), *adopted by* Order Adopting R. & R., *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353 (DG)(RER) (E.D.N.Y. Oct. 17, 2023); 12 N.Y.C.R.R. § 142-2.4(a). Like the unpaid overtime wages, spread of hours damages are calculated based on the applicable minimum wage rates for the relevant time period.  *Esquivel*, 2023 WL 6338666, at *13.

During the relevant time periods, Plaintiffs allege that they worked 12 hours per day throughout their employment and that Defendants failed to pay them spread of hours for those days.  (*See* Morales Decl., ECF No. 27 ¶ 33; Rosas Decl., ECF No. 28 ¶ 14; Orellana Decl., ECF No. 30 ¶ 24.)  The Court has carefully reviewed Plaintiffs' submission and concludes that they correctly calculate the spread of hours damages shown below in Tables 5 and 6:

Table 5: Rosas Unpaid Spread of Hours Pay

| Dates of Employment | Wks | Min. Wage | Spread of Hours per week | Total Unpaid SOH |
|---|---|---|---|---|
| 12/01/2019 to 12/31/2019 | 4 | $13.50 | 4 | $216.00 |
| 01/01/2020 to 01/31/2020 | 4 | $15.00 | 4 | $240.00 |
| 02/01/2020 to 04/03/2022 | 113 | $15.00 | 4 | $6,780 |
| | | | Total: | $7,236 |

Table 6: Orellana Unpaid Spread of Hours Pay

| Dates of Employment | Wks | Min. Wage | Spread of Hours per week | Total Unpaid SOH |
|---|---|---|---|---|
| 02/14/2017 to 12/31/2017 | 46 | $10.50 | 6 | $2,898 |
| 01/01/2018 to 12/31/2018 | 52 | $12.00 | 6 | $3,744 |
| 01/01/2019 to 12/31/2019 | 52 | $13.50 | 6 | $4,212 |
| 01/01/2020 to 01/31/2021 | 57 | $15.00 | 6 | $5,130 |
| 02/01/2021 to 02/21/2022 | 55 | $15.00 | 5 | $4,125 |
| | | | Total: | $20,109 |

Therefore, the Court respectfully recommends that Plaintiffs should be awarded for unpaid spread of hours consisting of **$7,236** for Rosas and **$20,109** for Orellana.

### D.    Liquidated Damages

Plaintiffs request liquidated damages of $53,560.80 for Rosas and $185,392.32 for Orellana.  (Mem., ECF No. 26 at 17; Morales Decl., ECF No. 27 ¶ 140; Morales Decl. Ex. 9, ECF No. 27-9 at 2 (damages chart).)

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law.  *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)).  "Plaintiff[] may not, however, recover 'duplicative liquidated damages for the same course of conduct' under both the FLSA and NYLL."  *Pastrana*, 2022 WL 16857111, at *10 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).  "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery."  *Payamps*, 2019 WL 8381264, at *13.  Here, where Defendants have defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiffs, the greater liquidated damages available under the NYLL are appropriate.  As noted, Plaintiffs' calculated damages for unpaid minimum wage and overtime compensation are incorrect, but the spread of hours pay is correct.  (*See* §§ VII.A.–C., *supra*.)  That said, the Court's calculations result in the same total liquidated damages that Plaintiffs seek.  Accordingly, the Court respectfully recommends that Plaintiffs should be awarded the requested liquidated damages under the NYLL only, consisting of **$53,560.80** for Rosas and **$185,392.32** for Orellana.

### E.     Wage Notice and Wage Statements

Plaintiffs each seek $5,000 for Defendants' failure to provide wage notices pursuant to NYLL § 195(1) and $5,000 for Defendants' failure to provide wage statements pursuant to NYLL § 195(3).   (Mem., ECF No. 26 at 18–20; Morales Decl., ECF No. 27 ¶¶ 129–37; Morales Decl. Ex. 9, ECF No. 27-9 at 2 (damages chart).)

The penalty for failing to provide a wage notice is $50 per day, up to $5,000 (*i.e.*, 100 days), and the penalty for failing to provide wage statements is $250 per day, up to $5,000 (*i.e.*, 20 days).  *Cuchimaque*, 2023 WL 5152336, at *6 (citing N.Y. Lab. Law §§ 198(1-b) & N.Y. Lab. Law § 198(1-d)).  As alleged, each Plaintiff worked for more than 100 days without receiving wage notices and worked more than 20 days without receiving wage statements. (Compl., ECF No. 1 ¶¶ 26–27, 41, 56–57; Rosas Decl., ECF No. 28 ¶¶ 10–11, 25–26; Rosas Supp. Decl., ECF No. 29 ¶¶ 4–5; Orellana Decl., ECF No. 30 ¶ 10, 25–26; Orellana Supp. Decl., ECF No. 31 ¶¶ 5–6.)  Each Plaintiff thus is entitled to the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3). Therefore, the Court respectfully recommends that Rosas should be awarded **$10,000** and Orellana should be awarded **$10,000** for violations of NYLL § 195(1) and NYLL § 195(3).

### F.     Pre-judgment Interest

Plaintiffs seek, as of February 7, 2024, prejudgment interest consisting of $14,412.11 for Rosas and $74,644.43 for Orellana. (Mem., ECF No. 26 at 17–18; Morales Decl., ECF No. 27 ¶¶ 143, 145, 159; Morales Decl. Ex. 9, ECF No. 27-9 at 2 (damages chart).)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages." *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).  In contrast, the

NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 48. Accordingly, Plaintiffs are eligible to recover prejudgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum. *Ramah*, 2021 WL 7906551, at *10; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022), *reconsideration denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages.") (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)); *see also Avedana*, 2021 WL 4255361, at *12 (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate prejudgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Pastrana*, 2022 WL 16857111, at *10; *Ms. Wine Shop*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded. (*See* § VII.D., *supra*.) The Court calculates prejudgment interest by determining the midpoint of the relevant period. The Court selects February 11, 2021 as the midpoint date for Rosas (the midpoint between Rosas's start

date of employment (December 1, 2019) and Rosas's end date of employment (April 25, 2022)) as a reasonable intermediate date.  For Orellana, the Court selects August 19, 2019, (the midpoint between the beginning of the accrual of Orellana's NYLL claims (February 14, 2017) and Orellana's end date of employment (February 21, 2022)).  Applying a nine percent per annum rate, the Court respectfully recommends that Rosas should be awarded **$17,252.40**[8] in prejudgment interest to increase at a rate of $13.20 per day and Orellana should be awarded **$84,517.79**[9] in prejudgment interest to increase as a rate of $45.71 per day.

### G.    Attorney's Fees

Plaintiffs seeks $60,670.50 in attorneys' fee based on 167.2 hours of work for their counsel, Katz Melinger PLLC.  (Mem., ECF No. 26 at 20–21; Morales Decl., ECF No. 27 ¶ 157; Morales Decl. Ex. 10, ECF No. 27–10 at 11 (attorney time records).)

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.

---

[8] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages for Rosas ($53,550.80) by 9%, then dividing by 365, for a daily rate of $13.20. The daily rate is then multiplied by the number of days between February 11, 2021 and September 10, 2024 (1,307 days).

[9] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($185,392.32) by 9%, then dividing by 365, for a daily rate of $45.71. The daily rate is then multiplied by the number of days between August 19, 2019 and September 10, 2024 (1,849 days).

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Esquivel*, 2023 WL 6338666, at *17. "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, the record shows that an award of attorneys' fees is appropriate but that some of the requested hourly rates and reasonable hours expended should be reduced.

### 1.    Hourly Rate

#### a.    Kenneth Katz

Plaintiffs request that the Court award 0.7 hours for Kenneth Katz at an hourly rate of $575. (Morales Decl., ECF No. 27 ¶ 150; Morales Decl. Ex. 10, ECF No. 27–10 (attorney

time records).)  Mr. Katz earned his J.D. from Hofstra University School of Law in 2003 and was admitted to practice in New York in 2004.  (Morales Decl., ECF No. 27 ¶ 150.)  Mr. Katz is the founding member and managing partner at Katz Melinger and focuses his practice on wage and hour litigation.  (*Id.*)

The Court finds that the requested hourly rate of $575 for Mr. Katz is inconsistent with the range of rates awarded for partners in this district.  *Morales*, 2023 WL 7684775, at *7. Plaintiffs do not argue why a higher hourly rate is justified in this relatively straightforward wage and hour default case.  *Payamps*, 2019 WL 8381264, at *15.  In addition, courts have declined to award Mr. Katz a requested hourly rate of $500, which is less than what he seeks here.  *E.g.*, *Lucero II*, 2023 WL 4760598, at *2 (awarding Mr. Katz $450 for a multi-plaintiff wage & hour default motion).  Accordingly, an appropriate hourly rate for Mr. Katz is $450.

### b.    Nicole Grunfeld

Plaintiffs request that the Court award 10 hours for Nicole Grunfeld at an hourly rate of $525. (Morales Decl., ECF No. 27 ¶ 151; Morales Decl. Ex. 10, ECF No. 27–10 (attorney time records).)  Ms. Grunfeld is a partner at Katz Melinger and earned her J.D. from New York University School of Law in 2004 and has been a member of the New York Bar since 2005. (Morales Decl., ECF No. 27 ¶ 151.)  Ms. Grunfeld has focused her practice on plaintiffs' employment law for more than 15 years.  (*Id.*)  The Court finds that the requested hourly rate of $525 for Ms. Grunfeld is inconsistent with the range of rates awarded for partners in this district and unreasonable under the circumstances of this case.  Instead, the Court finds that a reduced hourly rate of $400 is appropriate for Ms. Grunfeld.

### c.    Adam Sackowitz

Plaintiffs request that the Court award 1.30 hours for Mr. Sackowitz at an hourly rate of $435.  (Morales Decl., ECF No. 27 ¶ 152; Morales Decl. Ex. 10, ECF No. 27–10 (attorney time records).)  Mr. Sackowitz is a senior associate at Katz Melinger and earned his J.D. from the University of California.  (Morales Decl., ECF No. 27 ¶ 152.)  Mr. Sackowitz was admitted to the New York Bar in 2015 and has focused his practice on employment law for more than seven years.  (*Id.*)  His hourly rate is inconsistent with the range of rates awarded for senior associates in this district because rates of $400 per hour or higher in FLSA cases are generally awarded for attorneys with more experience.  *E.P.E. Enter. Corp.*, 2024 WL 1632255, at *16 (recommending $375 for a partner who has been practicing since 2012).  Recently, Mr. Sackowitz was awarded an hourly rate of $375 in an FLSA default case.  *Lucero II*, 2023 WL 4760598, at *2.  Thus, the Court respectfully recommends a reduced hourly rate of $375 for Mr. Sackowitz is warranted.

### d.    Katherine Morales

Plaintiffs also request that the Court award 66.2 hours for Katherine Morales at an hourly rate of $375.  (Morales Decl., ECF No. 27 ¶ 153; Morales Decl. Ex. 10, ECF No. 27–10 (attorney time records).)  Ms. Morales is an associate at Katz Melinger and earned her J.D. from Georgetown University of Law Center in 2017.  (Morales Decl., ECF No. 27 ¶ 153.)  Ms. Morales has been a member of the New York Bar since 2018 and has focused her practice exclusively on employment law since August 2017.  (*Id.*) The billing rate of $375 is generally awarded for attorneys with more experience (such as Mr. Sackowitz, *see* § VII.G.1.c., *supra*).  *E.P.E. Enter. Corp.*, 2024 WL 1632255, at *16.   Accordingly, the Court respectfully recommends an hourly rate of $300 for Ms. Morales.

### e.    Alexa Salazar

Plaintiffs request that the Court award 58.5 hours for Alexa Salazar at an hourly rate of $350.  (Morales Decl., ECF No. 27 ¶ 154; Morales Decl. Ex. 10, ECF No. 27–10 (attorney time records).)  Ms. Salazar is an associate at Katz Melinger and earned her J.D. from St. John's University School of Law in 2020.  (Morales Decl., ECF No. 27 ¶ 154.)  Ms. Morales was admitted to the New York Bar in 2021 and has focused her practice on employment law. (*Id.*)  The requested hourly rate of $350 for Ms. Salazar is outside the range of rates typically awarded for junior associates in this district.  *Morales*, 2023 WL 7684775, at *8.  Instead, the Court recommends a reduced hourly rate of $250 for Ms. Salazar is appropriate for the circumstances of this case.

### f.    Jonathan Trinidad-Lira

Plaintiffs request that the Court award .10 hours for Jonathan Trinidad-Lira at an hourly rate of $325.  (Morales Decl., ECF No. 27 ¶ 155; Morales Decl. Ex. 10, ECF No. 27–10 (attorney time records).)  Mr. Trinidad-Lira is an associate at Katz Melinger and earned his J.D. from Seton Hall University School of Law in 2022.  (Morales Decl., ECF No. 27 ¶ 155.) Mr. Trinidad-Lira was admitted to practice in New York in 2023 and has focused his practice on employment law since joining the firm in August 2022.  The Court finds that the requested hourly rate of $325 for Mr. Trinidad-Lira is substantially higher than rates awarded for associates with less than two years' experience.  *See, e.g.*, *Ling Chen v. Asian Terrace Rest.*, *Inc.*, 507 F. Supp. 3d 430, 436 (E.D.N.Y. 2020) (reducing hourly rate to $200 for an associate with less than two years' experience.)  Instead, the Court recommends a reduced hourly rate of $200 as appropriate given Mr. Trinidad-Lira's level of experience.

g.    **Vanessa Ueoka**

Plaintiffs request that the Court award $300 for Vanessa Ueoka at an hourly rate of $300.  (Morales Decl., ECF No. 27 ¶ 156; Morales Decl. Ex. 10, ECF No. 27–10 (attorney time records).)  Ms. Ueoka was previously a law clerk at Katz Melinger from August 2022 until December 2023, focusing on employment law, and earned her J.D. from Rutgers Law School in 2021.  An hourly rate of $300 for law clerks exceeds the prevailing hourly rate of $70 to 100 for legal support staff and, absent further justification, the Court recommends a reduced rate of $100 per hour.  *Quintanilla v. Pete's Arbor Care Servs., Inc.*, No. 19-CV-6894 (JMA)(ARL), 2024 WL 3675900, at *6 ("In this District, law clerks are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals.").

2.    **Reasonable Hours Expended**

The Court also finds that the number of hours expended in this case is unreasonable based on the records attached to the motion and recommends an overall percentage reduction.

First, the billing records include excessive and redundant time entries. For example, Plaintiffs bill approximately 30 hours for drafting, editing, and conferring about the Complaint, which contains garden-variety wage and hour causes of action. (Morales Decl. Ex. 10, ECF No. 27–10 at 2–3 (attorney time records).)  Next, "a reduction is warranted because the hours requested include time spent correcting the attorney's own mistakes."  *Payamps*, 2019 WL 8381264, at *16.  For example, counsel includes hours spent drafting a second motion for default judgment after the first motion was withdrawn for failure to comply with the Local Civil Rules and the SCRA.  Finally, the request of 167.20 hours far exceeds the reasonable amount of time this district has awarded in a relatively straightforward default case with two Plaintiffs. *Payamps*, 2019 WL 8381264, at *16 (recommending 71.73 hours as unreasonable

in FLSA and NYLL default judgment case); *cf. Lucero I*, 2023 WL 4828640, at *11 (recommending 67.90 hours awarded to Katz Melinger in wage and hour default case involving three plaintiffs) .

In light of the unnecessary hours spent and excessive amount of hours requested for a FLSA default judgment case, the Court recommends that the total number of hours be reduced by 15% across the board. This results in the following fee calculations set forth in Table 7, based upon the adjusted hourly rates:

Table 7: Recommended Attorneys' Fees

| Attorney | Hours | Hourly Rate | Total Fees |
|---|---|---|---|
| Kenneth Katz | .60 | $450 | $270 |
| Nicole Grunfeld | 8.5 | $400 | $3,400 |
| Adam Sackowitz | 1.1 | $375 | $412.50 |
| Katherine Morales | 56.27 | $300 | $16,881 |
| Alexa Salazar | 49.72 | $250 | $12,430 |
| Jonathan Trinidad-Lira | .08 | $200 | $16 |
| Vanessa Ueoka | 25.84 | $100 | $2,584 |
| | Total: | | $35,993.50 |

Accordingly, the Court respectfully recommends an award of **$35,993.50** in attorneys' fees.

**H.    Costs**

Finally, Plaintiffs seek $1,664.62 in costs, including court filing, service of process, and document translation fees. (Morales Decl., ECF No. 27 ¶ 158; Morales Decl. Ex. 11, ECF No. 27–11.)

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at \*13.  Plaintiffs must provide sufficient documentary evidence to support an award of reasonable costs.  *Marine*, 2022 WL 17820084, at \*11.  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at \*11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, Plaintiffs are entitled to the filing fee for this case, as the docket reflects that they paid the $402 filing fee.  (ECF No. 1 Dkt. Entry.)  Plaintiffs also support the request for process server and document translation fees with receipts reflecting $1,262.62 in costs incurred.  (*See* Morales Decl. Ex. 11, ECF No. 27–11.)

Therefore, the Court respectfully recommends that Plaintiffs should be awarded a total of **$1,664.62** in costs.

## I.      Post-Judgment Interest

Finally, Plaintiffs request post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.  (Morales Decl. Ex. 12, ECF No. 27–12 (Proposed Jdgmt).)

 "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).  Accordingly, the Court recommends that Plaintiffs should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII. **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' second motion for default judgment at ECF No. 25 should be **granted** as follows:

(1) the Clerk of Court should enter the proposed default judgment (as amended)[10];

(2) Rosas should be awarded damages in the amount of **$134,374** which includes: (a) $32,574 in unpaid minimum wage pay; (b) $13,750.80 in unpaid overtime wages; (c) $7,236 in unpaid spread of hours premium pay; (d) $53,560.80 in liquidated damages; (e) $10,000 for statutory violations (f) $17,252.40 in prejudgment interest to increase by $13.20 per day the entry of judgment; and

(3) Orellana should be awarded damages in the amount of **$465,302.43** which includes (a) $66,006.40 in unpaid minimum wage pay; (b) $99,276.92 in unpaid overtime wages; (c) $20,109 in unpaid spread of hours premium pay; (d) $185,392.32 in liquidated damages; (e) $10,000 for statutory violations; (f) $84,517.79 in prejudgment interest to increase by $45.71 per day until the entry of judgment;

(4) attorneys' fees of $35,993.50;

(5) costs of $1,664.62; and

(6) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

A copy of this Report and Recommendation is being served on Plaintiffs via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation on Defendants at the following addresses forthwith: (1) M and M Solucion Flat Fixed Inc., 53-02 Flushing Avenue, Queens, NY 11378; (2) Marco T. Mejia, 53-02 Flushing Avenue,

---

[10] The amendments to the proposed judgment at ECF No. 27-12 are revising the amounts of damages to be consistent with this Report and Recommendation

Queens, NY 11378; (3) Elma Bustillos, 53-02 Flushing Avenue, Queens, NY 11378; and (4) Elma Bustillos, 2602 Central Avenue, Apartment 14, Union City, New Jersey 07087.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Gujarati.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 10, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

49